**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARL LOWE and KEARBY KAISER, on behalf of themselves and others similarly situated, | ) ) ) | |
| | ) | 1:14-cv-3687 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CVS PHARMACY, INC. and MINUTECLINIC, LLC, | ) ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

<u>**COMPLAINT – CLASS ACTION**</u>

1.      Plaintiffs Carl Lowe and Kearby Kaiser bring this action against Defendants CVS

Pharmacy, Inc. and MinuteClinic, LLC (collectively, "CVS"), to secure redress for Defendants'

practice of making calls using an automatic telephone dialing system or an artificial or

prerecorded voice to the cellular telephones of Plaintiffs and others, in violation of the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as well as for playing prerecorded

messages during autodialed calls to Plaintiffs and others and impeding caller identification, in

violation of the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305/1 *et seq*.

**INTRODUCTION**

2.      Advancements in telephone dialing technology since the 1980s and 90s have

made reaching a large number of consumers by telephone easier and more cost-effective.

However, this technology has also brought with it an onslaught of unsolicited robocalls, spam

text messages, and junk faxes that intrude on individual privacy and waste consumer time and

money.  As a result, the federal government and numerous states have enacted legislation to

1

combat these widespread telemarketing abuses.  As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers….  Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243 § 2(6, 12) (1991), *codified at* 47 U.S.C. § 227.

3.     As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice  … to any telephone number assigned to a … cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated.  47 U.S.C. § 227(b)(3).

4.     In Illinois, the Automatic Telephone Dialers Act ("ATDA") also prohibits, inter alia, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party" or impeding caller IDs during telemarketing calls.  815 ILCS 305/15(d); 30(b).  The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees.  815 ILCS 305/30.  Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

5.     Plaintiffs, having received unsolicited autodialed and prerecorded voice calls from Defendants—and, in Plaintiff Kaiser's case, which impeded caller identification—file this Complaint on behalf of themselves and others similarly situated, seeking relief from Defendants' illegal telemarketing practices.

2

**JURISDICTION AND VENUE**

6.     This Court has federal question subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1331 with respect to the TCPA claims, *Mims v. Arrow Financial Services,*

*Inc.*, 132 S. Ct. 740 (2012), as well as supplemental jurisdiction over the state ATDA claims

pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related so as to form part of the

same case or controversy—namely, Defendants' wrongful telemarketing through the use of

automatic dialing equipment and a prerecorded voice to Plaintiffs and others without consent.

7.     This Court also has subject matter jurisdiction pursuant to the Class Action

Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d).  The amount in controversy

exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the

proposed class of at least tens of thousands is entitled to $500 in statutory damages for each

call that has violated the ATDA.  *See* 815 ILCS 305/30.  Further, where Plaintiffs are citizens of

the State of Illinois and Defendants are citizens of Rhode Island and/or Delaware, at least one

class member is a citizen of a state different from any Defendant.

8.     The Court has personal jurisdiction over Defendants and venue is appropriate in

this District because Defendants have offices and retail locations here, Plaintiffs reside and

received the calls that are the subject of this lawsuit here, and because a substantial portion of

the events giving rise to this cause of action occurred here.

**PARTIES**

9.     Plaintiff Carl Lowe is a natural person who resides in this District.

10.    Plaintiff Kearby Kaiser is a natural person who resides in this District.

11.    Defendant CVS Pharmacy, Inc. ("CVS/pharmacy") is a Rhode Island corporation headquartered at One CVS Drive, Woonsocket, Rhode Island 02895.  CVS/pharmacy is a division of CVS Caremark Corporation, and has locations throughout this District.

12.    Defendant MinuteClinic, LLC ("MinuteClinic") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.  MinuteClinic is also a division of CVS Caremark Corporation, and has locations throughout this District.

13.    CVS/pharmacy, the retail division of Caremark, is America's leading retail pharmacy, with more than 7,500 CVS/pharmacy and Longs Drug stores, including in this District.

14.    MinuteClinic is the retail medical clinic division of Caremark, which operates its clinics largely if not entirely out of CVS/pharmacy locations, including in this District.

15.    In addition to pharmaceuticals, CVS sells everything from personal health care products to snacks and household goods.

16.    The two defendants are under common ownership of CVS Caremark Corporation.

**FACTS**

17.    Within the four years prior to the filing of this action, Defendants used equipment to dial the telephone numbers of potential customers, including Plaintiffs.

18.    The equipment Defendants used to call Plaintiffs and others not only had the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with a

4

recorded message. These calls were made with equipment capable of dialing numbers without human intervention.

19.     Additionally, CVS's calls did not use live voice interaction; rather, they consisted of taped communications soliciting the sale of Defendants' goods and services. That is to say, the messages were unattended by human beings, and were synthesized by a computer, or recorded by an actor ahead of time, and then played automatically during the calls. These prerecorded messages advertised the commercial sale of products and services available through CVS/pharmacy and MinuteClinic.

20.     Many of the people whose phones were called as a result of Defendants' autodialing and prerecorded voice message practices never actually consented to receive such calls, including Plaintiffs.

21.     On information and belief, many of these individuals were called more than once, and Defendants lacks an adequate system for preventing autodialed or prerecorded voice calls to phones for which they do not have consent to call.

22.     Defendants intended to make these calls.

23.     Furthermore, Defendants are well aware of the TCPA, ATDA, and other federal and state statutes' prohibitions against use of autodialers and prerecorded messages in calls to consumers, but made the business decision to make these calls, anyway.

24.     Defendants also knew that the TCPA, ATDA, and other state and/or federal laws prohibit manipulation of caller ID information, but did this anyway. For example, although there is no private right of action under the TCPA for manipulation of caller ID, doing so is a criminal act. 47 U.S.C. § 227(e)(5)(B).

**Facts Relating to Plaintiff Lowe**

25.     On or about October 27, 2013, at approximately 9:02 a.m., Defendants called

Plaintiff Lowe's cellular telephone from phone number (773) 752-1425.

26.     The voicemail message left on Plaintiff's cell phone stated:

This is a courtesy call from CVS/pharmacy for Anna.  We are calling to inform you that your prescription order is available for pickup at CVS/pharmacy, located at 1228 East 53rd Street, Kimbark Plaza, Chicago, Illinois.  You may pick up your prescription at your earliest convenience during normal business hours.

Flu shots are available in every store, every day.  We accept many insurance plans.  No appointment is necessary.  Get your flu shot when you pick up your prescription.  If you have already picked up your prescription, please disregard this message.

Thank you for being a valued customer of CVS/pharmacy.  We look forward to serving you in the future.  Good bye.

27.     The October 27, 2013 call and others Plaintiff received from CVS used a

prerecorded voice.  For example, instead of more naturally fluid speech from a live caller, the

message paused awkwardly to include specifics within the message's script, such as when

"CVS/pharmacy," "Anna," or the CVS/pharmacy location's address were mentioned.

28.     Plaintiff Lowe is not "Anna," and no one named "Anna" has access to or is

otherwise able to be reached at his cellular telephone number.

29.     In fact, this was not the first time that Plaintiff's cell phone had been called by

CVS for "Anna."  After receiving a similar prerecorded voice call to his cell phone approximately

a year prior to the October 27, 2013 call, Plaintiff physically went to the CVS/pharmacy location

at 1228 East 53rd Street, Kimbark Plaza, Chicago, Illinois, and informed the pharmacist and

another employee that CVS's calls were going to the wrong person, and to stop calling him.

Although Plaintiff was assured that this problem would be corrected, he has continued to receive multiple prerecorded voice calls from CVS for "Anna."

30.     As described below relating to Plaintiff Kaiser, Defendants' calls to Plaintiff Lowe were similarly made using an "automatic telephone dialing system" or "autodialer," as such terms are defined in the TCPA and ATDA, respectively.  Apart from the fact that the calls utilized a prerecorded voice message, the calls continued even after Plaintiff directly spoke with CVS about it having called the wrong person, indicating the use of an automatic, rather than human-involved, system.

31.     Plaintiff Lowe never consented to receive these autodialed or prerecorded voice calls to his cell phone from or on behalf of CVS.

32.     Upon information and belief, CVS did not have prior express written consent from *any* person for the October 27, 2013 call, let alone Plaintiff.

33.     Upon information and belief, based upon the caller ID and the location of the store, these telephone calls originated from Illinois. Moreover, the calls were made to benefit a CVS/MinuteClinic location in Illinois.

34.     Plaintiff Lowe was damaged by Defendants' calls.  His privacy was wrongfully invaded, and Plaintiff has become aggravated with having to deal with the frustration of repeated, unwanted phone calls using up time on his phone and forcing him to divert attention away from his business and other activities.

### Facts Relating to Plaintiff Kaiser

35.     On or about September 11, 2013, at approximately 7:45 p.m., Defendants called Plaintiff Kaiser's cellular telephone number.

7

36.     Upon information and belief, this call originated from Illinois.

37.     This call was made as part of a calling campaign, the purpose of which was to encourage Plaintiff and others to buy flu shots and everyday items from CVS.

38.     The caller identification for the call came through on Plaintiff's cell phone as "Unknown Caller."

39.     CVS manipulated this call so that the caller ID for the calls would be anonymous.

40.     The call, along with the other calls that were part of this and similar campaigns, was made using an "automatic telephone dialing system" or "autodialer," as such terms are defined in the TCPA and ATDA, respectively.  The equipment Defendant used to call Plaintiffs and others had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.  In other words, no human being physically dialed each digit of Plaintiff's and the other class members' telephone numbers to call their phone—the calls were made using equipment with the capacity to dial numbers without human intervention.  The equipment CVS used to call Plaintiff and the other class members did so by sequentially or randomly accessing their stored telephone number and automatically connecting their telephone with a recorded message advertising CVS goods and services.

41.     Plaintiff did not answer, and the call went to voicemail. Plaintiff has received many other such calls from CVS.

42.     The communication by CVS was "prerecorded," in the sense that it was a taped or otherwise recorded generic telemarketing message played in calls to Plaintiff and numerous other recipients.  The message did not allow for live voice interaction.

43.     The message, as recorded on Plaintiff Kaiser's voicemail, states:

This is MinuteClinic calling to let you know that flu shots are now available. MinuteClinic is the medical clinic inside your local CVS/pharmacy. We are open seven days a week, including evenings and weekends. No appointment is necessary. We also accept most insurance plans, including Medicare Part B. Plus, you will receive a CVS/pharmacy 20% shopping pass with your flu shot. So why wait? Come into your MinuteClinic today. Please check our website at MinuteClinic-dot-com for our clinic hours near you. Thank you for choosing MinuteClinic.

44.     Plaintiff has received more than one other call from CVS in the twelve months preceding and/or subsequent to the September 11, 2013 call.

45.     Plaintiff did not provide CVS with permission or consent to make these calls.

46.     Upon information and belief, based upon the location of the store, these telephone calls originated from Illinois. Moreover, the calls were made to benefit a CVS/MinuteClinic location in Illinois.

47.     Plaintiffs and the classes have been substantially damaged by Defendants' calls. Their privacy was improperly invaded, many were charged for the calls, and they were annoyed. *See Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (stating that unwanted cell phone robocall recipients are damaged because they are charged "out of pocket" cellular airtime minutes).

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiffs and the TCPA Class Against All Defendants)

48.     Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein. Count I is brought by both Plaintiffs.

49.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

50.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention[,]" such as predictive dialers. *See Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14092, para 132 (2003)).

51.     Defendants used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other members of the TCPA Class defined below.

52.     These calls, including those to Plaintiffs, utilized a prerecorded voice.

53.     These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiffs and the other members of the TCPA Class when their calls were made.

54.     As such, Defendants' calls were willful or knowing. *See* 47 U.S.C. § 312(f)(1).

55.     Defendants have, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by making non-emergency calls to the cell phones of Plaintiffs and the other members of the TCPA Class using an automatic telephone dialing system and/or an artificial or prerecorded voice, without prior express consent.

56.     As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiffs and the other members of the TCPA Class were harmed and are each entitled to a

minimum of $500.00 in damages for each violation.  Plaintiff and the TCPA Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

57.     Because Defendants knew or should have known that Plaintiffs and the other members of the TCPA Class had not given prior express consent to receive their autodialed and prerecorded voice calls to their cellular telephones—and/or willfully used an automatic telephone dialing system and/or prerecorded voice message to call the cell phones of Plaintiffs and the other members of the TCPA Class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the TCPA Class, pursuant to Section 227(b)(3) of the TCPA.

### Class Allegations

58.     Plaintiff brings this Count I on behalf of a class (the "TCPA Class"), consisting of:

> All persons who, within the four years of the filing of this action, CVS or someone on CVS's behalf called their cellular telephone number using an artificial or prerecorded voice or equipment capable of dialing numbers without human intervention.

Plaintiff alleges a subclass of calls that were made on or after October 16, 2013.

59.     Upon information and belief, Defendants called more than 100 phone numbers in the four years prior to the filing of this action utilizing a device with the capacity to dial numbers without human intervention or a message that was artificial or had been recorded ahead of time.

60.     Common questions of law or fact exist as to all members of the TCPA Class and predominate over any questions solely affecting any individual member, including Plaintiffs. Such questions common to the TCPA Class include but are not limited to:

    a.   Whether Defendants used an "automatic telephone dialing system" or "artificial or prerecorded voice" calls as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

    b.   Whether Defendants had prior express consent to contact Plaintiffs and the other members of the TCPA Class when they made calls to such persons' cell phones using an automatic telephone dialing system or artificial or prerecorded voice; and

    c.   Damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiffs and the other members of the TCPA Class are entitled to trebled damages.

61.    Plaintiffs' claims are typical of the claims of the other members of the TCPA Class. The factual and legal bases of CVS's liability to Plaintiffs and the other members of the TCPA Class are the same:  CVS violated the TCPA by causing the cellular telephone number of each member of the TCPA Class, including Plaintiffs, to be called using an automatic telephone dialing system and/or artificial or prerecorded voice message without permission.

62.    Plaintiffs will fairly and adequately protect the interests of the TCPA Class. Plaintiffs have no interests that might conflict with the interests of the TCPA Class.  Plaintiffs are interested in pursuing their claims vigorously, and they have retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

63.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual action would entail.  There are, on information and belief, thousands of members of the TCPA Class, such that joinder of all members is impracticable.

64.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

65.     Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the TCPA Class, thereby making relief appropriate with respect to the TCPA Class as a whole.  Prosecution of separate actions by individual members of the TCPA Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the TCPA Class that would establish incompatible standards of conduct.

66.     The identity of the TCPA Class is, on information and belief, readily identifiable from Defendants' records.

WHEREFORE, Plaintiffs Carl Lowe and Kearby Kaiser, on behalf of themselves and the TCPA Class, request that the Court enter judgment against Defendants for:

A.     An injunction against further violations;

B.     Statutory damages; and

C.     Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violations of the ATDA, 815 ILCS 305/1 *et seq.***
**(On Behalf of Plaintiffs and the ATD Class Against All Defendants)**

13

67.     Plaintiffs reallege and incorporate the foregoing allegations as if set forth fully herein.  Count II is brought by both Plaintiffs.

68.     The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party."  815 ILCS 305/30(b).

69.     Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).[1]  A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction."  815 ILCS 305/5(c).

70.     Defendants did not have the consent of Plaintiffs or the other members of the ATD Class to play a prerecorded message placed by an autodialer.

71.     Nonetheless, CVS called the phones of Plaintiffs and the other members of the ATD Class using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message.  No human being physically dialed each digit of Plaintiffs' or the other ATD Class members' phone numbers to connect their telephones with a recorded message; rather.

72.     Defendants' prerecorded messages to the phones of Plaintiffs and the other ATD Class members included language soliciting the sale of CVS goods or services without live voice interaction, including getting a flu shot through MinuteClinic or shopping at CVS/pharmacy.

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system."  815 ILCS 305/5(a).

73. Consequently, CVS violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiffs and the other ATD Class members, without such persons' consent.

74. As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiffs and the other members of the ATD Class were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

<u>**Class Allegations**</u>

75. Plaintiffs brings this Count II on behalf of themselves and a class (the "ATD Class") consisting of:

> All persons in the State of Illinois who, on or after a date three years before the filing of this action, CVS or someone on CVS's behalf called and played a prerecorded message placed by any device or system programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with a recorded message.

76. The class is so numerous that joinder of all members is impractical. Upon information and belief, there are more than 100 members of the ATD Class.

77. There are questions of law and fact common to the ATD Class that predominate over any questions affecting any individual class member. The predominant common questions include:

> (a) Whether Defendants' calls played "prerecorded messages" placed by an "autodialer" as such terms are defined under the ATDA; and

> (b) Whether CVS had the consent of Plaintiffs and the other ATD Class members to play a prerecorded message placed by an autodialer.

78.     Plaintiffs' claims are typical of the claims of the other members of the ATD Class. The factual and legal bases of Defendants' liability to Plaintiffs and the other members of the ATD Class are the same: CVS violated the ATDA by playing prerecorded messages placed by an autodialer to Plaintiffs and the other members of the ATD Class without permission.

79.     Plaintiffs will fairly and adequately protect the interests of the ATD Class. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices, including relating to telemarketing. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

80.     A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against is small because it is not economically feasible to bring individual actions.

81.     Management of this class action is likely to present significantly fewer difficulties than those presented in many class actions, e.g., for securities fraud.

82.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

83.     Defendants have acted on grounds generally applicable to the ATD Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the ATD Class, should they realize their rights have been violated,

would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

WHEREFORE, Plaintiff Carl Lowe and Kearby Kaiser, on behalf of themselves and the ATD Class, request that the Court enter judgment against Defendants for:

A.      Statutory damages of $500 per violation;

B.      Costs of suit;

C.      Reasonable attorneys' fees; and

D.      Such other or further relief as the Court deems just and proper.

### COUNT III
**Violations of the ATDA, 815 ILCS 305/1 *et seq.*
(On Behalf of Plaintiff Kaiser and the Caller ID Class
Against All Defendants)**

84.      Plaintiff realleges and incorporates the foregoing allegations as if set forth fully herein.  Count III is brought by Plaintiff Kaiser.

85.      The ATDA prohibits "mak[ing] or caus[ing] to be made telephone calls utilizing an autodialer in a manner that does not comply with Section 15."  815 ILCS 305/30(a).

86.      Section 15 of the ATDA, in turn, provides that "[a]n autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number."  815 ILCS 305/15(d).

87.      Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]"

815 ILCS 305/5(a).[2] A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

88.     CVS played a prerecorded message soliciting the sale of Defendants' goods and/or services—in Plaintiff Kaiser's case, a flu shot for MinuteClinic and shopping at CVS/pharmacy—placed by an autodialer in calls to the phones of Plaintiff Kaiser and the other members of the Caller ID Class.

89.     Specifically, CVS's calls to Plaintiff and the other Caller ID Class members were made by a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers, which was programmed to sequentially or randomly access Plaintiff's and the other Caller ID Class members' stored telephone numbers in order to automatically connect their telephones with a recorded message soliciting the sale of CVS goods or services without live voice interaction.

90.     While, on information and belief, CVS's service or equipment was capable of allowing the display of its telephone number, CVS prevented the calling number from being disclosed during its calls to Plaintiff and the other members of the Caller ID Class.

91.     In Plaintiff Kaiser's case, for example, although the number was capable of being displayed, the caller ID displayed to Plaintiff was instead stated as "Unknown Caller."

92.     As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiffs and the other members of the Caller ID Class were harmed and are each entitled to statutory damages of $500 per violation, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

---

[2] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

### Class Allegations

93.     Plaintiff Kaiser brings this Count III on behalf of himself and a class (the "Caller ID

Class") consisting of:

> All persons in the State of Illinois to whom CVS caused, on or after a date three
> years before the filing of this action, an autodialed telephone call containing a
> recorded message soliciting the sale of goods or services to be made, where the
> caller ID failed to display the number calling.

94.     Upon information and belief, CVS called more than 100 phone numbers in the

three years prior to the filing of this action using an autodialer to solicit the sale of Defendants'

goods or services by way of recorded message, where the number calling was not displayed on

the recipient's caller ID.

95.     Common questions of law or fact exist as to all members of the Caller ID Class

and predominate over any questions solely affecting any individual member, including Plaintiff.

Such questions common to the Caller ID Class include but are not limited to:

(a)     Whether CVS used an "autodialer" or "recorded message" as such terms

are defined or understood under the ATDA; and

(b)     Whether, despite being capable of allowing the display of its telephone

number, CVS's dialing service or equipment impeded the function of the

caller ID of Plaintiff Kaiser and the other Caller ID Class members.

96.     Plaintiff Kaiser's claims are typical of the claims of the other members of the

Caller ID Class.  The factual and legal bases of Defendants' liability to Plaintiff and the other

members of the Class are the same:  Defendant violated the ATDA by impeding the caller ID in

autodialed telemarketing calls to the members of the Caller ID Class, including Plaintiff.

97.     Plaintiff will fairly and adequately protect the interests of the Caller ID Class.

Plaintiff Kaiser has no interests that might conflict with the interests of the Caller ID Class.

Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and

experienced in class and complex litigation, including with regards to the claims alleged herein.

98.     Class action treatment is superior to the alternatives for the fair and efficient

adjudication of the controversy alleged herein.  Such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual action

would entail.  There are, on information and belief, thousands of members of the Caller ID Class,

such that joinder of all members is impracticable.

99.     No difficulties are likely to be encountered in the management of this class

action that would preclude its maintenance as a class action, and no superior alternative exists

for the fair and efficient adjudication of this controversy.

100.    Defendants have acted and failed to act on grounds generally applicable to

Plaintiff Kaiser and the other members of the Caller ID Class, thereby making relief appropriate

with respect to the Caller ID Class as a whole.  Prosecution of separate actions by individual

members of the Caller ID Class, should they even realize that their rights have been violated,

would likely create the risk of inconsistent or varying adjudications with respect to individual

members of the Caller ID Class that would establish incompatible standards of conduct.

101.    The identity of the Caller ID Class is, on information and belief, readily

identifiable from Defendants' records.

WHEREFORE, Plaintiff Kearby Kaiser, on behalf of himself and the Caller ID Class,

requests that the Court enter judgment against Defendants for:

A.      Statutory damages of $500 per violation;

B.      Costs of suit;

C.      Reasonable attorneys' fees; and

D.      Such other or further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.


Dated:    May 20, 2014                                    Respectfully submitted,

                                                          /s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
 155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com

Daniel J. Marovitch
MAROVITCH LAW FIRM, LLC
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
Telephone: (312) 533-1605
Facsimile: (312) 488-4206
dmarovitch@marovitchlaw.com

*Counsel for Plaintiffs*

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that Defendants take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or artificial or prerecorded voice calls, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiffs or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiffs or the putative class members, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendants request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of Defendants.

/s/Alexander H. Burke