IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL LOWE and KEARBY KAISER, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | 14 C 3687 |
| v. | ) ) | Judge John Z. Lee |
| CVS PHARMACY, INC., MINUTECLINIC, LLC, and WEST CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Carl Lowe and Kearby Kaiser ("Plaintiffs"), on behalf of themselves and others similarly situated, have brought this action against CVS Pharmacy, Inc., MinuteClinic, LLC, and West Corporation ("Defendants"). Plaintiffs' claims arise under the Telephone Consumer Protection Act (TCPA), 42 U.S.C. § 227, *et seq*., and the Illinois Automatic Telephone Dialers Act (ATDA), 815 Ill. Comp. Stat. 305/1, *et seq*. They allege Defendants used an automated system to place unsolicited, prerecorded calls to Plaintiffs and others. Defendants have moved to dismiss all claims against Defendant MinuteClinic ("MinuteClinic") and any claims against the remaining Defendants that are based on a call to Plaintiff Kaiser on September 11, 2013. Defendants maintain that this call cannot serve as a basis for personal jurisdiction, and thus move to dismiss under Federal Rule of Procedure ("Rule") 12(b)(2). For the reasons that follow, Defendants' motion to dismiss [223] is denied.

## Background

On September 11, 2013, Defendants CVS and MinuteClinic, by way of Defendant West's auto-dialing service, placed an unsolicited call to Kaiser's cell phone. Am. Compl. ¶ 36. Kaiser's cell phone number begins with the area code "312," which is affiliated with Chicago, Illinois, where Kaiser resides. *Id.* ¶ 10; Pl.'s Mem. Opp'n Mot. Dismiss 2, ECF No. 245. According to Defendants, Kaiser had previously visited a MinuteClinic in Illinois in 2012 to receive a flu vaccine. Def.'s Mem. Supp. Mot. Dismiss 2, ECF No. 223. MinuteClinic contacted him "as part of a one-time patient call program placed to telephone numbers associated with MinuteClinic patients who had received flu shots across the country in the prior flu season." *Id.* The call left the following prerecorded message:

> This is MinuteClinic calling to let you know that flu shots are now available. MinuteClinic is the medical clinic inside your local CVS/pharmacy. We are open seven days a week, including evenings and weekends. No appointment is necessary. We also accept most insurance plans, including Medicare Part B. Plus, you will receive a CVS/pharmacy 20% shopping pass with your flu shot. So why wait? Come into your MinuteClinic today. Please check our website at MinuteClinic-dot-com for our clinic hours near you. Thank you for choosing MinuteClinic.

Am. Compl. ¶ 44. The call is the sole basis for Kaiser's claims against MinuteClinic. Pl.'s Mem. Opp'n at 3.

Plaintiffs filed their complaint before this Court on May 20, 2014. As part of their complaint, Plaintiffs alleged:

> The Court has personal jurisdiction over Defendants and venue is appropriate in this District because Defendants have offices and retail locations here, Plaintiffs reside and *received the calls that are the*

*subject of this lawsuit here*, and because a substantial portion of the events giving rise to this cause of action occurred here.

Compl. ¶ 8, ECF No. 1 (emphasis added).[1]  In their answer to the complaint, filed October 2, 2014, Defendants CVS and MinuteClinic responded:

> The allegations contained in this paragraph set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants deny any characterizations of wrongdoing on their part and otherwise deny the allegations in this paragraph.

Answer ¶ 8, ECF No. 42.[2]  This case then proceeded for almost two years as the parties engaged in discovery.

At the close of this period and the end of fact discovery, Defendants deposed Plaintiff Kaiser.  Pl.'s Mem. Opp'n, Ex. 2.  During the deposition, Defendants' counsel inquired into the details of the September 11, 2013, call.  Kaiser testified that he could not remember who the call was from—CVS or MinuteClinic—in part because he received a number of unsolicited calls around that time and had only listened to the September 11, 2013, call once in the last three years.  *Id.* at 61:16–62:19.  He then attempted to recall where he was when he received the call.  He stated, "I did not answer my phone when I was on vacation in 2013, and I had some messages, and some of the messages were even robocalls from CVS where they left messages."  *Id.* at 62:16–19.  The relevant exchange then proceeded as follows:

Q (counsel): And where were you on vacation?

---

[1]    Plaintiffs' amended complaint copies the substance of this allegation but states that CVS specifically, rather than the Defendants generally, have offices and retail locations here. Am. Compl. ¶ 8.  It also adds that the calls "include[] those made by West."  *Id.*

[2]    Defendants CVS and MinuteClinic repeated this response in their answer to Plaintiffs' amended complaint.  Answer Am. Compl. ¶ 8, ECF No. 91.

A (Kaiser): Thailand.  Probably Thailand.  I don't know.  '13.

Q: Did you have your cell phone with you?

A: No.  Physically, I don't know.  But it was physically not turned on.  I know that.

Q: Okay.  Do you, usually, when you travel overseas, take your phone with you?

A: Yes.

Q. So - -

A: But I do not turn it on.

. . . .

Q: So when the September 11th, 2013 call came in, you were in Thailand?

A: I think.

Q: Okay.

A: September.  It was hot.  I think it was Thailand.

Q: Did you save your call?

A: Maybe - - Maybe Panama.  I don't know.  I don't know where I was on vacation, but on vacation.

Q: Overseas?

A. Yeah.

*Id.* at 62:20–63:6, 63:16–64:2.  Defendants thereafter filed the instant motion to dismiss under Rule 12(b)(2), contending that Kaiser's testimony revealed a lack of personal jurisdiction over MinuteClinic, as well as Defendants CVS and West to the

extent Kaiser's claims against them are based on this call. Defs.' Mot. Dismiss, ECF No. 223.

In his response, Kaiser has submitted the following: (1) a copy of an errata sheet in which Kaiser changes his deposition testimony to reflect that he was in Illinois on September 11, 2013; (2) an affidavit asserting the same; and (3) various items in support of his claim that he was in Illinois on that date, including a personal calendar notation, self-prepared timesheets, bank and credit card statements, and phone records. *See* Pls.' Mem. Opp'n, Exs. 1, 1-A to 1–D, 3.

## Legal Standard

If a court lacks personal jurisdiction over a party to an action, it must dismiss the case as to that party. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff has the burden of demonstrating personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Id.* That burden, in a case where a court rules on the motion to dismiss solely based on the submission of written materials, is "'to make out a *prima facie* case of personal jurisdiction.'" *Id.* (quoting *Hyatt*, 302 F.3d at 713). In making this determination, the court can consider affidavits and other supporting materials. *See id.* The court must resolve any conflicts in the affidavits and supporting materials in the plaintiff's favor. *Id.* at 782–83.

Where personal jurisdiction is challenged and material facts are in dispute, the court "must hold an evidentiary hearing to resolve them." *Hyatt*, 302 F.3d at 713. Here, however, there are no material facts in dispute, as will become clear. Additionally, the parties have not sought a hearing, instead directing the Court to Kaiser's deposition testimony and their written submissions. *Linkepic Inc v. Vyasil*, LLC, 146 F. Supp. 3d 943, 948 (N.D. Ill. 2015). Accordingly, the Court proceeds to discuss MinuteClinic's personal jurisdiction objections.

## Analysis

## I. Waiver of MinuteClinic's Personal Jurisdiction Objections

Before reaching the merits of Defendants' personal jurisdiction objections, the Court first turns to Kaiser's contention that, by neglecting to raise lack of personal jurisdiction in a Rule 12 motion or as an affirmative defense in their answer, and then "submitting to this litigation in all respects" for almost two years, Defendants waived their objections. Pl.'s Mem. Opp'n at 10, 13.

As a preliminary matter, the Court finds that Defendants' denial in their answer of the jurisdictional allegations in the complaint was sufficient to formally preserve their personal jurisdiction objections. While Kaiser is correct to point out that the language of Rule 12(h) envisions raising the defense of lack of personal jurisdiction only by "motion under this rule" or "in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course," *see id.* at 10–11; Fed. R. Civ. P. 12(h)(1)(B), courts have regularly held that denying the jurisdictional allegations in the complaint in an answer is sufficient to avoid formal waiver. *Payton v. Kale Realty, LLC*, No. 13 C 8002, 2014 WL 4214917, at *1–2 (N.D. Ill.

6

Aug. 26, 2014); *accord Fabara v. GoFit, LLC*, 308 F.R.D. 380, 399 (D.N.M. 2015) (collecting cases). Accordingly, Defendants formally preserved their objections to personal jurisdiction.

Even where the defense of lack of personal jurisdiction is not formally waived, however, it can be waived by conduct. *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (holding that defendants, who "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction" and "participated in lengthy discovery, filed various motions and opposed a number of motions," had waived their personal jurisdiction objections by conduct). "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Where waiver by conduct is concerned, "the cases are far from uniform on the subject; the result seems to turn on the particular circumstances of an individual case." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (3d ed. 2004, supp. 2015).

Based on the record in this case, the Court concludes that Defendants waived their personal jurisdiction objections by conduct. Defendants' counsel entered their initial appearance in this case on January 10, 2014. ECF Nos. 7–10. They filed their initial answer to Plaintiffs' initial complaint, in which they denied the

jurisdictional allegations in the complaint, on October 2, 2014—almost two years before filing the instant motion to dismiss. ECF No. 42. Since then, the parties have engaged in extensive discovery, with the exception of a period from September 3, 2015 through December 1, 2015, during which the case was stayed. Order 9/3/15, ECF No. 120; Order 12/1/15, ECF No. 125. Defendants have filed or joined in multiple motions, *e.g.*, Joint Mot. Leave Defs.' Conclude Dep. Pl. Lowe, ECF No. 211, and responded to many others. The Court has expended considerable effort in overseeing this process. Thus, in contrast to circumstances in which parties have raised personal jurisdiction objections and actively pursued them, *e.g.*, *Pierson v. Nat'l Inst. for Labor Relations Research*, No. 15 C 11049, 2016 WL 6093490, at *4 (N.D. Ill. Oct. 17, 2016), Defendants denied Plaintiffs' jurisdictional allegations but nevertheless participated in this litigation through extensive discovery for almost two years. It would therefore be reasonable for Plaintiffs to believe that Defendants intended to contest their claims on the merits. Accordingly, Defendants' participation in this case constitutes waiver by conduct. *See Cont'l Bank*, 10 F.3d at 1297; *Pierson*, 2016 WL 6093490, at *4 (collecting cases).

Defendants nevertheless contend that their conduct should be excused because they were not aware of the facts giving rise to the defense, which were disclosed for the first time in Kaiser's deposition. Defs.' Mem. Supp. at 13–14. But this contention is inconsistent with Defendants' denial of the jurisdictional allegations in their answer. If Defendants were able to deny Plaintiffs' jurisdictional allegations in the complaint consistent with Defendants' obligations

under Rule 11,[3] then their delay in pursuing the possibility of lack of personal jurisdiction cannot be excused.  While Defendants are correct to point out that Rule 12 envisions waiver only of defenses that are available, *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738–39 (1st Cir. 1983), the authorities that Defendants cite do not address the circumstances in this case, where Defendants denied the jurisdictional allegations in their first responsive pleading and only now seek to dismiss on that basis almost two years later.  Moreover, Defendants have failed to respond to Kaiser's observation that Defendants could have pursued any doubts about personal jurisdiction through an interrogatory at the beginning of discovery.  Pl.'s Mem. Opp'n at 11–12.

For these reasons, the Court finds that Defendants have waived their objections to personal jurisdiction.  In the interest of completeness, however, and out of recognition that the basis for Defendants' objections only recently came to light, the Court will proceed to address Defendants' objections on the merits.

## II.     Personal Jurisdiction over MinuteClinic

Whether the court has jurisdiction over MinuteClinic in this case is determined by reference to the Due Process Clause of the Fourteenth Amendment and Illinois's state long-arm statute.  *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Paldo Sign & Display Co. v. United Vending & Mktg., Inc.*, No. 13-CV-

---

[3]     By filing an answer denying Plaintiffs' jurisdictional allegations, Defendants "certifie[d] that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."  Fed. R. Civ. P. 11(b)(4).  Defendants did not so identify.

1896, 2014 WL 960847, at *2 n.2 (N.D. Ill. Mar. 11, 2014). Illinois's long-arm statute permits the exercise of jurisdiction to the full extent permitted by the U.S. Constitution. 735 Ill. Comp. Stat. 5/2-209(c). Thus, the federal and state law inquiries merge. *Tamburo*, 601 F.3d at 700. "The key question is therefore whether [a] defendant[] ha[s] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 700–01 (quoting *Int'l Shoe Co. v. Washington.*, 326 U.S. 310, 316 (1945)). In other words, a defendant "must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there.'" *Id.* at 701 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

There are two types of personal jurisdiction: general and specific. Here, Kaiser concedes that the court does not have general personal jurisdiction over MinuteClinic. Pl.'s Mem. Opp'n at 7. Specific personal jurisdiction, on the other hand, generally requires that "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (quoting *Burger King*, 471 U.S. at 472). Furthermore, for the purposes of Kaiser's TCPA claim, which the Court treats as an intentional tort for jurisdictional purposes, *see Pickering v. ADP Dealer Servs., Inc.*, No. 12 C 6256, 2013 WL 996212, at *3 (N.D. Ill. Mar. 13, 2013), the Seventh Circuit has articulated three specific requirements

for purposeful direction: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703. Implicit in the third requirement is that an injury occurred that is based in the forum state. *See id.*

As mentioned above, in addition to purposeful direction, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction," such that the plaintiff's injury "arises out of" the defendant's contacts. *Id.* at 703, 708. Neither the Supreme Court nor the Seventh Circuit has definitively resolved what the causal relationship between the defendant's contacts and the plaintiff's injury must be, but the Seventh Circuit has "suggested in passing that a mere 'but for' causal relationship is insufficient to establish the required nexus." *Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012).

Here, the parties focus their dispute on whether Kaiser was injured in the forum state, Illinois. Defendants contend that personal jurisdiction over MinuteClinic is lacking in this case because Kaiser's deposition reveals that he did not receive the call in question in Illinois. Defendants assert that because Kaiser's deposition reveals he did not receive the call in Illinois, he cannot demonstrate that MinuteClinic purposefully directed conduct at Illinois. For his part, Kaiser insists that his deposition testimony was ambiguous, vague, or mistaken, and that he did in fact receive the call in question in Illinois. Kaiser also raises the broader argument that, even if his deposition testimony establishes that he was outside of

Illinois when the call was placed, the Court nevertheless has specific personal jurisdiction over MinuteClinic.

For the reasons explained below, the Court finds that, even assuming Kaiser's deposition testimony establishes that MinuteClinic's call was placed to his phone while he was out of the country, there is nevertheless personal jurisdiction over MinuteClinic.[4] But as a preliminary matter, the Court finds that Kaiser's deposition testimony does not unequivocally establish that he was out of the country when he received MinuteClinic's call. The portion of testimony that Defendants cite begins with Kaiser's inability to specifically identify who called him on September 11, 2013. Pl.'s Mem. Opp'n, Ex. 2, at 61:16–19. He expressed a general lack of familiarity with the call in question, having "listened to the call one time in the past three years." *Id.* at 62:4–5. Kaiser testified that he received multiple robocalls and recorded messages around September 11, 2013. *See id.* at 62:16–19. Some of these messages were left "when [Kaiser] was on vacation in 2013." *Id.* at 62:17. Kaiser could not remember exactly where he was on vacation, other than that he was overseas. *Id.* at 63:23–64:2. To that end, when asked directly where he was when he received the September 11, 2013, call, Kaiser testified that he was not sure precisely where he was, but that he was on vacation overseas. *Id.*

In reviewing the whole of this testimony—and aided by the video excerpt to which the parties have directed the Court—it appears that Kaiser was generally

---

[4]     For this reason, there are no material facts in dispute concerning which the Court must hold an evidentiary hearing. *Hyatt*, 302 F.3d at 713.

unfamiliar with the circumstances of MinuteClinic's call. Kaiser received numerous robocalls and recorded messages during September 2013 and was unfamiliar with the specific details of those calls. Many of them went to voicemail, including some while he was on vacation. Based on this testimony, the Court is left wondering whether Kaiser confused calls he received on vacation with the call from MinuteClinic on September 11, 2013. The passage of time, the number of calls received, and Kaiser's lack of familiarity with any individual call puts into question Defendant's wholesale reliance on Kaiser's testimony that he remembers being overseas on vacation when he received MinuteClinic's call.

Additionally, this portion of Kaiser's deposition testimony cannot be considered in isolation. Immediately after the exchange above, Kaiser testified to the truthfulness of the allegations in the complaint, stating that he believed the allegations were accurate. *Id.* at 69:21–22. While Kaiser did not specifically address the allegation that he was in Illinois when he received MinuteClinic's call, his blanket affirmation of the complaint's allegations, which include that he received the call in Illinois, brings his earlier testimony into doubt.[5]

To that end, the Court deems it appropriate to consider Kaiser's subsequent affidavit, which states that he was in Illinois when he received MinuteClinic's call.

---

[5] Defendants argue that the notion that Kaiser's blanket affirmation "somehow trumps a specific sworn, statement of fact that contradicts it defies common sense." Def.'s Reply 5, ECF No. 240. But this argument fails in two respects. First, it eschews responsibility for the fact that it was Defendants' counsel who elicited this testimony immediately after Kaiser stated he was overseas when MinuteClinic's call was placed. Additionally, the affirmation calls into question testimony that, for the reasons the Court has explained, was not as specific and unequivocal as Defendants suggest.

In his affidavit, Kaiser asserts that "[a]fter investigating this issue further after my deposition and reviewing my records, I can now definitively confirm that I was in Illinois on September 11, 2013." Pl.'s Mem. Opp'n, Ex. 1 ¶ 4. In light of this affidavit[6] and its view of Kaiser's deposition testimony, the Court finds that Kaiser has met his burden of establishing personal jurisdiction.

While Defendants are correct to point out that the "sham affidavit rule" prohibits parties from "creating 'sham' issues of fact with affidavits that contradict their prior depositions," *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996),[7] Kaiser's deposition testimony was internally inconsistent, and his affidavit aims to explain and resolve the inconsistency. Additionally, as Defendants acknowledge, the sham affidavit rule does not apply where "a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Given the passage of time, the number of calls that Kaiser alleges he received, and the lack of

---

[6]    This sworn affidavit, viewed in line with his deposition testimony, is sufficient to persuade the Court that Kaiser has met his burden of establishing personal jurisdiction. *Purdue Research*, 338 F.3d at 782. Thus, the Court need not consider Kaiser's attempt to correct his deposition testimony by errata nor the materials Kaiser has submitted in support of his affidavit.

[7]    The sham affidavit rule typically arises in the summary judgment context. Defendants have not cited any cases that apply the rule in resolving a challenge to personal jurisdiction. Nevertheless, assuming the rule applies just the same, it applies only when a change in testimony "is incredible and unexplained." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010). "[A] court must examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury," or in this case, the judge. *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007).

familiarity Kaiser expressed with the call in question, the Court concludes that a lapse of memory is a plausible explanation for Kaiser's deposition testimony.

That said, even if the Court were to find that Kaiser's deposition testimony establishes that he was overseas when MinuteClinic placed its call, the Court would still have personal jurisdiction over MinuteClinic. On this version of events, Kaiser would have learned of the call only when he returned to Illinois following his vacation, as he testified that his phone was turned off when the call was placed. Pl.'s Mem. Opp'n, Ex. 2, at 63:6. Thus, the relevant injury would center around Kaiser's retrieval of the voicemail in question upon his return to Illinois.[8] In such circumstances, the Court could nevertheless exercise specific personal jurisdiction over MinuteClinic.

MinuteClinic's act of placing a call to a phone number with an Illinois-affiliated area code—knowing that number was associated with a past customer of an area clinic—and leaving a message that solicits the customer to visit an area clinic constitutes purposeful direction warranting the Court's exercise of jurisdiction. "[M]ultiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the [purposeful direction] test for a court of that state to exercise personal

---

[8]     In their reply, Defendants argue that the Court should not believe Kaiser's testimony that he listened to the voicemail while in Illinois. Reply at 13 n.13. They point to Kaiser's effort to clarify that he was not overseas when the call was placed, contending that this effort ruins Kaiser's credibility. *Id.* For the reasons explained above, however, Kaiser's response seeks to supplement and clarify vague and conflicting testimony at his deposition. And in any case, Defendants have not presented any basis for believing that Kaiser was elsewhere when he listened to the voicemail.

jurisdiction over the defendant."[9]  *Keim v. ADF MidAtlantic, LLC*, No. 12-80577-CIV, 2016 WL 4248224, at *5 (S.D. Fla. Aug. 10, 2016) (collecting cases); *Payton*, 2014 WL 4214917, at *3; *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (observing that holding otherwise would leave defendants "free to unlawfully contact the cell phones of individuals all over the country yet be shielded from having to defend themselves outside their home forum merely because area codes do not have a 100% correlation with residence").

The fact that Kaiser would have first learned of MinuteClinic's call as a voicemail upon his return to Illinois does not change the analysis.  The parties do not contest that prerecorded messages or voicemails that an individual does not immediately answer, but later retrieves, can serve as the basis for a cause of action under the TCPA.  *See generally Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).  Accordingly, leaving a prerecorded voicemail that is later retrieved in Illinois, where the area code of the phone number at issue is affiliated with Illinois, the number was obtained when a customer visited a MinuteClinic in Illinois, and the message directs the customer to the Illinois market, is sufficient to constitute purposeful direction from which this Court can exercise jurisdiction.

---

[9]    Defendants direct the Court to *Sojka v. Loyalty Media LLC*, No. 14-CV-770, 2015 WL 2444506 (N.D. Ill. May 20, 2015), in which the court "recognize[d] that a cell phone prefix, unlike a landline, is not dispositive of the residence, domicile or location of the cell phone owner," and declined to exercise specific personal jurisdiction in a TCPA action on that basis alone.  *Id.* at *3.  In *Sojka*, however, the "defendants did not operate nationwide businesses or target customers nationwide," and the text messages at issue offered promotions that could only be redeemed in Colorado.  *Id.*  MinuteClinic's conduct in this case, however, occurred as part of a nationwide campaign directing customers to area MinuteClinics, including those in Illinois.

Defendants argue that subjecting MinuteClinic to personal jurisdiction "would lead to the absurd possibility of a TCPA plaintiff receiving a call in one state, and then claiming jurisdiction was established in a second state—a state presumably of plaintiff's choosing—because that is where the voicemail of that call was retrieved. This is a factor utterly outside of the control of the defendant, and thus improper to establish jurisdiction." Defs.' Mem Supp. 10 n.4. Although it is true that Kaiser could have listened to the voicemail in any state, he listened to the voicemail when he returned home to Illinois. And this could not have come as a surprise to Defendants given that (1) the call was made to an Illinois-based area code and (2) the number was obtained when Kaiser had previously visited a MinuteClinic in Illinois. These facts, in conjunction with the fact that the promotional call prompted the customer to visit a local MinuteClinic, are sufficient to establish personal jurisdiction in this case.[10]

Indeed, the message in question informed Kaiser that "MinuteClinic is the medical clinic inside *your local* CVS/pharmacy)" and implored him to "[c]ome into *your* MinuteClinic today" and "check our website at MinuteClinic-dot-com for our clinic hours *near you.*" Am. Compl. ¶ 9 (emphases added). Thus, given that MinuteClinic had obtained the phone number from a prior visit to one of its locations, the message can be fairly construed as purposely directing Kaiser to the MinuteClinic that he had visited previously (*i.e., his* MinuteClinic). MinuteClinic's

---

[10]    This case is readily distinguishable from *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997). In *RAR, Inc.*, the plaintiff's assertion of specific personal jurisdiction was premised solely on the defendant's prior contacts with the forum, which were unrelated to plaintiff's claims. *Id.* at 1279.

contention that "[t]he call in question did not urge Plaintiff Kaiser . . . to visit a MinuteClinic in a particular state," Defs.' Mem. Supp. at 10, ignores the content of the message and the circumstances by which Kaiser's number was obtained.

For these reasons, the Court finds that MinuteClinic purposely directed activities at Illinois and that Kaiser's purported injury arises directly from those contacts. Furthermore, the Court finds that its exercise of jurisdiction over MinuteClinic comports with traditional notions of fair play and substantial justice, particularly given that MinuteClinic has already participated in litigation before the Court for over two years and it would be most just and efficient to permit Kaiser's claims to proceed. On these grounds, the Court holds that it has personal jurisdiction over MinuteClinic.[11]

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss [223] is denied.

**IT IS SO ORDERED.**                    **ENTERED    2/9/17**

_____
**John Z. Lee**
**United States District Judge**

---

[11]    The same or similar grounds warrant the Court's exercise of jurisdiction as to Defendants CVS and West to the extent they arise from the September 11, 2013, call. In any event, Kaiser's claims against CVS and West arise from more than this call alone. *See* Am. Compl. ¶¶ 17, 42, 45.