IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL LOWE and KEARBY KAISER, on behalf of themselves and others similarly situated, ) ) ) | |
| ) | No. 14 C 3687 |
| Plaintiffs, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| CVS PHARMACY, INC., MINUTECLINIC, LLC, and WEST CORPORATION, ) ) ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants move to strike paragraphs 7-9 of plaintiff's expert's rebuttal report on the grounds that the information in these paragraphs is not proper rebuttal testimony. For the reasons set forth below, the Court grants in part and denies in part the motion.

**Background**

Plaintiffs allege that defendants violated the Telephone Consumer Protection Act by "making calls using an automatic telephone dialing system or an artificial or prerecorded voice to the cellular telephones of Plaintiffs and others." (1st Am. Compl. ¶ 1, ECF 82); *see* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting "any person within the United States" from "mak[ing] any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ."). Consent is an affirmative defense to a TCPA claim on which defendants bear the burden of proof. *See, e.g.*, *Toney v. Quality Res.*,

*Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014); *Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F.Supp.2d 898, 905 (N.D. Ill. 2012).

In his report, defendants' expert, John Taylor, opined that there are "6 consent data sets that contain" 53,364 207 unique patient identification numbers. (Mem. Supp. Defs.' Mot. Strike, Ex. B, Taylor Report ¶¶ 40-41, ECF 279.) From this group, Taylor pulled a random sample of 1,000 unique patient identification numbers and compared those numbers with the patient identification numbers in each data set to determine if the 1,000 numbers existed in those sets. (*Id.* ¶¶ 41-42.) Taylor found that "[i]n the 1,000 record sample, 21 different possibilities of the six possible combinations [were] shown." (*Id.* ¶ 43.) "With this number of possibilities," Taylor concluded, "this entire process would have to be executed on all of the unique patient identifiers in the consent data to determine what single [data set] or combination of [data sets] reflects evidence of consent." (*Id.* ¶ 44.) "Those results would then have to be compared to the unique [patient identification numbers] in the call data to determine what elements of consent data existed for each patient who received calls." (*Id.*)

In his deposition, Taylor said his consent data analysis was not to determine whether there was consent for the calls but was a "predictor of the work that would be required to evaluate all of the call data against all of the consent data." (Pls.' Mem. Opp'n Mot. Strike, Ex. 1, Taylor Dep. at 55-56, 67, ECF 297-1.) He also testified that, in other cases, he had performed a so-called gap analysis to determine from call data information whether the calls had complied with the TCPA. (*Id.* at 68.) He said, however, that a "[g]ap analysis really doesn't . . . work here" because of the large number of call records that need to be analyzed. (*Id.*)

In his rebuttal report, plaintiff's expert, Jeff Hansen, opined about a gap analysis he performed on the call and consent data "with an eye toward figuring out whether there was any

consent record at the time of a particular call." (Mem. Supp. Defs.' Mot. Strike, Ex. C, Hansen Rebuttal Report ¶ 7, ECF 280; *see also id.* ¶¶ 8-9.)  Defendants contend that this portion of Hansen's rebuttal report is not proper rebuttal, and thus should be stricken.

## Discussion

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (quotation omitted). "If . . . the court's scheduling order permits rebuttal experts and opinions, a party may submit an expert rebuttal witness who is 'limited to contradicting or rebutting evidence on the same subject matter identified by another party in its expert disclosures.'" *Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at *3 (N.D. Ill. Feb. 14, 2013) (quoting *Butler v. Sears Roebuck & Co.*, No. 06 C 7023, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010) (citing Fed. R. Civ. P. 26(a)(2)(C)).  A rebuttal expert report "cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions." *Larson v. Wis. Cent. Ltd.*, No. 10-C-446, 2012 WL 368379, at *4 (E.D. Wis. Feb. 3, 2012).

Plaintiffs argue that the discussion of the gap analysis in paragraphs 7-9 of Hansen's report is proper rebuttal because it refutes Taylor's opinion that "a particularly cumbersome process was required to match consent data with the call records." (Pls.' Mem. Opp'n Mot. Strike at 4, ECF 297.)  The Court agrees, in part.  Hansen may opine that it is possible to perform a gap analysis on the data in this case because that rebuts Taylor's testimony to the contrary. (*See* Pls.' Mem. Opp'n Mot. Strike, Ex. 1, Taylor Dep. at 69, ECF 297-1 (stating that a "[g]ap analysis doesn't . . . work here" because there are too many call records).)  He may not, however, opine about the results of his gap analysis, *i.e.*, the number of calls for which there is

no proof of consent, because Taylor did not provide an opinion on that issue. Similarly, Hansen can explain why, unlike Taylor, he believes "patient IDs are [not] a reliable way of determining whether there was consent for a particular call" (Mem. Supp. Defs.' Mot. Strike, Ex. C, Hansen Rebuttal Report ¶ 9, ECF 280), but he may not testify about the results he obtained using his alternate method.

Alternatively, plaintiffs say the contested testimony is proper rebuttal because consent is an affirmative defense that plaintiffs were not required to address in their opening expert report. (Pls.' Mem. Opp'n Mot. Strike at 9-10, ECF 297.) However, these expert reports go to the issue of class certification, not the merits, and plaintiffs bear the burden of proof on class certification. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Thus, if plaintiffs believe that consent, or the lack thereof, affects one of the Rule 23 requirements, they should have addressed it in their opening expert report.

Moreover, even if plaintiffs were not required to address the issue of consent in their opening report, they still would have been limited in their rebuttal report to responding to the issues raised by Taylor. Because Taylor did not opine on the number of calls for which there was consent, there would have been no basis for Hansen to address that issue in rebuttal.

## Conclusion

For the reasons set forth above the Court grants in part and denies in part defendants' motion to strike paragraphs 7-9 of plaintiff's expert's rebuttal report [277].

**SO ORDERED.**          **ENTERED: 5/17/17**

*M. David Weisman*
_____
**M. David Weisman**
**United States Magistrate Judge**