**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEARBY KAISER, on behalf of themselves and others similarly situated, | ) ) ) | Case No. 1:14-cv-03687 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CVS PHARMACY, INC., MINUTECLINIC, LLC, and WEST CORPORATION, | ) ) ) | Hon. Judge John Z. Lee |
| Defendants. | ) ) ) | Hon. Mag. Judge M. David Weisman |

**PLAINTIFF'S MOTION FOR
<u>ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD</u>**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    THE SETTLEMENT ..............................................................................................4

IV.     LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS ...............................5

V.      ARGUMENT ..........................................................................................................7

        A.      Class Counsel's Requested Fee Award Is Reasonable. ...........................7

                1.      Seventh Circuit Attorney Fee Analysis ........................................7

                2.       The risk associated with this litigation justifies the requested
                        fee award ......................................................................................10

                3.      The requested fee comports with the contract between Plaintiff and Class
                        Counsel, and typical contingency fee agreements in this Circuit. ............14

                4.      The requested fee reflects the fees awarded in other settlements. ...........15

                5.      The quality of performance and work invested support the fee request. ....18

                6.      The stakes of the case further support the fee request. ..............................19

        B.      The Court Should Also Award Reasonable Reimbursement for Expenses. ..........20

        C.      The Incentive Award to the Class Representative Should Be Approved. .............21

VI.     CONCLUSION .....................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

### <u>Cases</u>

*Abbott v. Lockheed Martin Corp.*,
  No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ...................................... 18

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ............................................................................ 12-13

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
  No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)........................................ 14

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
  480 F. Supp. 1195 (S.D.N.Y. 1979)........................................................................ 17

*Beesley v. Int'l Paper Co.*,
  No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................................ 20

*Benzion v. Vivint, Inc.*,
  No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201)........................................ 22

*Bickel v. Sheriff of Whitley Cnty*,
  No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015).................................... 18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) ................................................................................. 17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)......................................................................................... 5, 7, 20

*CE Design Ltd. v. CV's Crab House North, Inc.*,
  No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) ........................................... 16

*CE Design, Ltd. v. Exterior Sys., Inc.*,
  No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) ............................................... 16-17

*Charvat v. AEP Energy, Inc.*,
  No. 13-662 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 44) .................................................. 8

*City of Greenville v. Syngenta Corp Prot., Inc.*,
  904 F. Supp. 2d 902 (S.D. Ill. 2012)....................................................................... 17

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................................ 21

*Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462,

2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015)...................................................9

*Cummings v. Sallie Mae*,
   No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) ......................................... 8, 16

*Desai v. ADT Sec. Servs., Inc.*,
   No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) .................................... 16, 22

*Espejo v. Santander Consumer USA, Inc.*,
   No. 11-8987, 2019 WL 2450492 (N.D. Ill. June 12, 2019).................................... 13

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ...................................................................................... 6

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146)............................................ 16

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .................................................................................. 15

*Gaskill v. Gordon*,
   942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) ................... 6

*Golan v. Veritas Entm't, LLC*,
   No. 14- 69, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ...................................... 14

*Greene v. Emersons Ltd.*,
   No. 76-2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987) ...................................... 17

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368...........................................9, 20, 21

*Heekin v. Anthem, Inc.*,
   No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ................................ 22

*Hinman v. M&M Rentals, Inc.*,
   No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) ............................................. 16

*In re Ampicillin Antitrust Litig.*,
   526 F. Supp. 494 (D.D.C. 1981) ............................................................................ 17

*In re Bankcorp. Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ................................................................................ 17

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) .............................................................. 6, 8, 17

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997)........................................................................ 17

- iii -

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................ 6

*In re Dairy Farmers of Am., Inc.*,
    MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015).................................... 18

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
    No. 10-4038, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011)............................... 21

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................... 19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................... 17

*In re Synthroid Mkt. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ................................... 5, 14, 18, 20, 21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ...................................... 6

*Jamison v. First Credit Servs.*,
    290 F.R.D. 92 (N.D. Ill. 2013)........................................... 12

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ....................................... 10, 15

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015).................................... 16, 17, 18

*Luster v. Green Tree Servicing, LLC*,
    No. 14-1763 (N.D. Ga. Sept. 5, 2018) (Dkt. No. 153)............................. 12

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ....................................... 14

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) ........................................ 13

*Martin v. Dun & Bradstreet, Inc.*,
    No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) ...................... 8, 16

*Martin v. JTH Tax, Inc.*,
    No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Dkt. No. 86)............................. 17

*McCue v. MB Fin., Inc.*,
    No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ...................... 18

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
    No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) ........................................................ 16

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ................................................................ 6, 7, 8, 17

*Pinkus v. Sirius XM Radio, Inc.*,
    319 F. Supp. 3d 927 (N.D. Ill. 2018) ................................................................ 13

*Prena v. BMO Fin. Corp.*,
    No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .................................................... 18

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ................................................................ 6

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
    No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................................... 15

*Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016) ......................... 13

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*,
    No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) ....................................................... 16

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*,
    No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ..................................................... 11

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) ................................................................ 10

*Spano v. The Boeing Co.*,
    No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) .................................................... 18

*Spicer v. Chi. Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ................................................................ 20

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................................ 13

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ................................................................ 5, 10, 18

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ................................................................ 14, 17

*Van Gemert v. Boeing Co.*,
    516 F. Supp. 412 (S.D.N.Y. 1981) ................................................................ 17

*Will v. Gen. Dynamics Corp.*,
    No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..................................................... 17

*Zolkos v. Scriptfleet, Inc.*,
   No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ..................................................... 18

## **Statutes**

15 U.S.C. § 1681n(a) ............................................................................................................. 15

15 U.S.C. § 1692k(a) ............................................................................................................. 15

47 U.S.C. § 227(b)(3) ................................................................................................ 14, 15, 19

## **Other Authorities**

*In re Rules & Regs. Implementing the TCPA*,
   30 FCC Rcd. 7961 (2015) ................................................................................................ 11, 12

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 11, 12, 20

## **Regulations**

47 C.F.R. § 64.1200(a)(1)(iii) ................................................................................................. 2

## I.     INTRODUCTION

On August 5, 2019, this Court preliminarily approved a proposed class action settlement between Plaintiff Kearby Kaiser ("Plaintiff" or "Mr. Kaiser") and Defendants CVS Pharmacy, Inc. ("CVS Pharmacy"), MinuteClinic, LLC ("MinuteClinic") (collectively, "CVS"), and West Corporation ("West") (collectively with Plaintiff, the "Parties"). Dkt. 417.

The Settlement provides for the establishment of a non-reversionary, $15,000,000 common fund to be distributed to applicable Settlement Class Members associated with 233,079 unique cell phone numbers called with a message offering a CVS Pharmacy shopping pass during MinuteClinic's 2013 flu shot reminder calling campaign, less the costs of notice and administration, Class Counsel's attorneys' fees and expenses, and any incentive award to Plaintiff.[1] Notice is being effectuated through letters mailed directly to Settlement Class Members with identifiable addresses, supplemented with internet-based notice. Class Members with known addresses will be able to receive Settlement relief without the need to submit a Claim Form, while the expectedly small percentage of Class Members for whom no address is identified may submit Claim Forms by mail or directly through a dedicated Settlement Website.

As compensation for the substantial benefit conferred upon the Settlement Class, Plaintiff respectfully moves the Court for an award to Class Counsel of attorneys' fees of $5,000,000, which represents one-third of the Settlement Fund, or 34% of the Settlement Fund net of the costs of administration of the class and the incentive award to the class representative. Class Counsel additionally seek reimbursement of their out-of-pocket costs of $402,991.03 incurred in prosecuting the case.[2] This request should be approved because it (1) represents the market rate

---

[1]      All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Agr." or "Agreement"), filed at Dkt. 411-1.

[2]      Class Counsel's requested expenses are less than that set forth in the notice to the class, which referenced anticipated expenses of $450,000. Dkt. 411-1, Ex. C-1.

for this type of settlement, and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Plaintiff also respectfully moves the Court for an award of $15,000 to Plaintiff Kaiser for his work on behalf of the Class. As detailed herein, Plaintiff's motion should, respectfully, be granted.

## II.     BACKGROUND

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, calling a cell phone using an ATDS or an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

On May 20, 2014, Plaintiff filed a class action complaint in the United States District Court for the Northern District of Illinois, alleging violations of the TCPA arising from nonconsensual calls allegedly made by or on behalf of CVS to the cellular telephone numbers of himself and others using an automatic telephone dialing system or an artificial or prerecorded voice. Plaintiff also alleged violations of the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305/1 *et seq.*, arising out of Defendants' use of an autodialer to call his and others' phones, and impeding caller identification. Plaintiff subsequently amended his pleadings to add a CVS calling vendor, West, as a defendant, filing a First Amended Complaint on April 13, 2015 (the "Complaint").[3]

As the Court is aware, this litigation was hard-fought, with the case opening with a motion to stay pending a ruling on petitions for a declaratory ruling on calling a reassigned or wrong phone number, which was later renewed by CVS. Dkt. 25, 134. Defendants additionally moved to dismiss on jurisdictional grounds. Dkt. 223. Class Counsel and Plaintiff's expert

---

[3]     Kaiser was joined in these proceedings with another consumer plaintiff, Carl Lowe. Mr. Lowe has since dismissed his individual claims, Dkt. 419, and he is not a part of this Settlement.

reviewed over 135 GB of data, which included hundreds of thousands of pages of documents and over seven billion rows of call and consent-related data, and took and defended eight depositions in Illinois, Massachusetts, Nebraska, Rhode Island and New Hampshire. Exhibit B, Broderick Decl. ¶¶ 5-7. Plaintiff engaged in numerous meet and confer discussions - several of which wound up being multi-hour in-person contentious marathons - filed multiple discovery motions, and went through two rounds of briefing on class certification oral argument. Dkt. 52, 141, 156, 160, 173, 179, 189, 202-1, 287, 363, 366. This case was not easy: Defendants were well-represented by skilled counsel, who used every available resource and angle to defend the case.

In addition to numerous informal discussions between counsel, the Parties participated in two all-day mediation sessions with two mediators. On November 9, 2015, the Parties engaged in an all-day, in-person, arms-length mediation with the Rodney A. Max, Esq. Agr. ¶ 1.02. This mediation did not result in settlement, and the Parties thereafter continued to aggressively litigate the case, including through contested motion practice, extensive adversarial discovery, and briefing and oral argument on class certification. *Id.* On September 21, 2018, the Parties again participated in mediation, with Hon. Diane M. Welsh (Ret.) of JAMS. This mediation was, likewise, unsuccessful. Agr. ¶ 1.03.

In April 2019, counsel for the Parties reopened communications to determine the possibility that this case could be resolved through negotiated settlement, which efforts were ultimately successful at reaching an agreement in principle. Agr. ¶ 1.04. Based on their investigation and negotiations, which included extensive class and expert discovery, and taking into account the sharply contested issues involved, the risks, uncertainty, and cost of further prosecution of this litigation, and the substantial benefits to be received by Settlement Class Members pursuant to the Settlement Agreement, Plaintiff and his Counsel concluded that a

settlement with Defendants on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. At all times, the Parties' settlement negotiations were adversarial, non-collusive, and at arm's-length.

## III.   THE SETTLEMENT

The Settlement requires Defendants to pay $15,000,000 for the benefit of a Settlement Class, which includes the users or subscribers of the 233,079 telephone numbers on the Class List. The Class List is comprised of cellular telephone numbers used or owned by persons in the United States whom CVS called using an unattended message in MinuteClinic's 2013 flu shot reminder campaign that offered a CVS Pharmacy retail coupon, where: (1) the call was made to a cell phone number, or (2) the person was an Illinois resident. Dkt. 411-1, Agr. ¶¶ 2.09, 2.29; Dkt. 417, Order ¶ 4. Each Class Member with a known address[4] or who otherwise submits an approved claim is entitled to a pro rata share of the Settlement Fund less notice and administrative costs, Class Counsel's fees and expenses, and any incentive award the Court may award. Dkt. 200-1, Agr. ¶ 4.2.1. The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. *Id.* ¶ 4.2.6. Class Members with known addresses or who submit approved claims are expected to receive approximately $39 or more. Dkt. 411, at 5, fn 4.

Plaintiff respectfully requests that the Court approve attorneys' fees of $5,000,000 and costs of $402,991.03, as well as a $15,000 incentive award for Plaintiff Kaiser. As explained

---

[4]     Class Members with a known address will be mailed a settlement check directly, while those without a known address will have the opportunity to submit a claim for payment under the Settlement. Dkt. 411-1, Agr. ¶ 8.04.

below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested incentive award is comparable to other TCPA cases and should be approved.

## IV.     LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries: The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The approach favored for consumer class actions in the Seventh Circuit is to compute attorneys' fees as a percentage of the benefit conferred upon the class; "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (finding percentage-of-the-fund to be the "normal practice in consumer class actions"). As other courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The Seventh Circuit has also determined that, in assessing the reasonableness of requested attorneys' fee, courts should consider the ratio of "(1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (omitting administrative costs and incentive awards from analysis). The Seventh Circuit has clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

## V.     ARGUMENT

### A.     Class Counsel's Requested Fee Award Is Reasonable.

The percentage-of-the-fund method should be used here. *See Florin*, 34 F.3d at 566.

Class Counsel's and Plaintiff's efforts have resulted in a $15,000,000 non-reversionary

Settlement Fund that provides substantial, actual value to the Settlement Class. Class Members

will have the opportunity to obtain a settlement distribution of approximately $39. Dkt. 411-1,

Broderick Decl. ¶ 15. Class Counsel seek attorneys' fees of one-third of the Settlement Fund, or

$5,000,000, plus out-of-pocket costs of $402,991.03. Given the result obtained for the Class, and

the fact that the fee request is set at the "market range," the requested fee award is presumptively

reasonable. Further, the requested fee award of one-third of the total Settlement Fund is also

consistent with the "market price" as reflected in the fees approved by judges in this Circuit in

other TCPA class cases, considering the risks of non-payment, the quality and extent of Class

Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

### 1.     *Seventh Circuit Attorney Fee Analysis*

"Reversionary" or "claims made" settlements, where the defendant takes back any

amount of unclaimed/unused settlement funds, have come under scrutiny by the Seventh Circuit.

Here, however, there is a non-reversionary, "true" lump-sum cash fund of $15,000,000. Dkt.

411-1, Agr. ¶¶ 2.32, 4.02. *Pearson*'s discussion of *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480

(1980), highlights the difference:

> [I]n [*Boeing*] the "harvest" created by class counsel was an actual, existing
> judgment fund, and each member of the class had "an undisputed and
> mathematically ascertainable claim to part of a lump-sum judgment recovered on
> his behalf." *Id.* at 479. "Nothing in the court's order made Boeing's liability for this
> amount contingent upon the presentation of individual claims." *Id.* at 480 n.5. The
> class members [in *Boeing*] were known, the benefits of the settlement had been
> "traced with some accuracy," and costs could be "shifted with some exactitude to
> those benefiting." *Id.* at 480-81. [Unlike in *Boeing*,] … [t]here is no fund in the

7

> present case and no litigated judgment, and there was no reasonable expectation in
> advance of the deadline for filing claims that more members of the class would
> submit claims than did.

*Pearson*, 772 F.3d at 782.

In contrast, the $15,000,000, non-reversionary common Settlement Fund here presents precisely the type of "actual, existing judgment fund" cited with approval by the Seventh Circuit in *Pearson*. Further, each Class Member has "an undisputed and mathematically ascertainable claim" to their share of a lump-sum judgment. And while, in a reversionary settlement like the one addressed in *Pearson*, "class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims," *id.*, the notice plan in *this* case (*i.e.*, direct mail notice supplemented with a dedicated settlement website) presents no such issue because no money will revert to Defendant.

Here, Class Counsel's requested fee award easily satisfies the *Pearson* presumption of reasonableness: It is one-third of the total Settlement Fund, and approximately 34% of the Settlement Fund net of administrative costs and the class representative award—well under the 50% high-mark identified as presumptively reasonable by the Seventh Circuit in *Pearson*.

Class Counsel submit that this fee request is reasonable, consistent with market rates, and should be approved. *See Charvat v. AEP Energy, Inc.*, No. 13-662 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 44) (awarding one-third of common fund in TCPA case, which was 40% of common fund less administration costs); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. Feb. 15, 2015) (awarding 36% of common fund in fees for the first $10,000,000 of TCPA settlement); *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (awarding one-third of total payout for fees in TCPA case); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (awarding one-third of fund in fees in TCPA case).

8

In addition to their substantial litigation efforts, Class Counsel devoted many hours to negotiating the Settlement, as well, which included preparing their client's submission for two mediation sessions, and proceeding through further arms' length settlement negotiations with defense counsel by phone and e-mail.  Exhibit A, Burke Decl. ¶ 18; Exhibit B, Broderick Decl. ¶¶ 4-13. Class Counsel also spent substantial time preparing the settlement papers and notice documents, working with the independent notice provider, and drafting the motion for preliminary approval, and will continue to do so through final approval.  Exhibit A, Burke Decl. ¶ 18; Exhibit B, Broderick Decl. ¶ 14.

As another judge in this District has held, "a lodestar cross-check of the attorney's fees is not warranted."  *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015*)* (St. Eve, J.) (citing *Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc*., 743 F.3d 243, 247 (7th Cir. 2014)).  However, should the Court decide to consider Class Counsel's lodestar, a total of 4,914.35 attorney hours were spent generating a combined lodestar of y $3,683,632.50. *See* Exhibit A, Burke Decl. ¶ 16; Exhibit B, Broderick Decl. ¶¶ 16-17; Exhibit C, McCue Decl. ¶¶ 12-13; Exhibit D, Murphy Decl. ¶ 3. This results in a low multiplier of approximately 1.86  to reach the requested fee of $5,000,000 that is below the market rate for similar class litigation. Even for courts performing a lodestar cross check, this multiplier is consistent with decisions in this district. *Hale v. State Farm Mut. Auto. Ins. Co.,* No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *53 (S.D. Ill. Dec. 13, 2018) (approving multiplier of 2.83). Class Counsel additionally incurred $402,991.03 in expenses for the benefit of the Settlement Class. *See* Exhibit A, Burke Decl. ¶ 17; Exhibit B, Broderick Decl. ¶ 16; Exhibit C, McCue Decl. ¶ 12; Exhibit D, Murphy Decl. ¶ 3.

## 2. *The risk associated with this litigation justifies the requested fee award.*

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court, in applying percentage-of-the-fund approach, refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

Plaintiff's allegations in this case presented unique difficulties for class certification, summary judgment, and trial, which support the fee request. For example, Class Counsel took on this case without knowing the extent and scope of the calling at issue, and (based on past experience) anticipating a prolonged discovery battle over class-wide data production. Exhibit A, Burke Decl. ¶ 19.This proved to be even more involved than Class Counsel imagined: They went through multiple rounds of motions to compel and then had to expend significant attorney time and expert costs in order to analyze the substantial documentation and billions of rows of data Defendants ultimately produced. *Id.* If Class Counsel hadn't so zealously pursued discovery in this case, overcoming setback after setback in response to Defendants reticent to provide the materials Plaintiff believed were necessary to effectively litigate this action, this substantial

10

$15,000,000 settlement would not have been reached. *Id.*

Defendant's consent defense to the calls at issue also presented a hurdle to Plaintiff's ability to certify a Fed. R. Civ. P. 23(b)(3) class. Unlike in many other TCPA cases, Plaintiff Kaiser and other class members were prior customers of CVS, whom CVS contends provided their phone numbers to it during a prior healthcare-related transaction. This thus was not the typical case involving an unsolicited telemarketing call from a business with whom the consumer lacked any prior relationship. And this case was *further* complicated by the fact that the TCPA itself exempts HIPAA-related calling from its written consent requirement, *see* 47 U.S.C. § 227(b)(1)(A)(iii), and because the FCC has granted an exemption for certain healthcare-related calls under the TCPA, *see In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 147 (2015). Though Class Counsel disagree with the decisions' outcomes, several courts have decided against consumers when it comes to "flu shot reminder" call claims under the TCPA. *E.g., Latner v. Mt. Sinai Health Sys., Inc.*, 879 F.3d 52 (2d Cir. 2018) (affirming dismissal of TCPA class action based on flu shot reminder calling after consumer visit to facility years prior); *Bailey v. CVS Pharmacy, Inc.*, No. 17-11482, 2018 WL 3866701, at *8 (D.N.J. Aug. 14, 2018) (applying TCPA "Healthcare Exemption" to flu shot reminder texts); *Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835 (S.D.N.Y. 2017) (dismissing "flu shot reminder" case based on consent purportedly previously provided during a prior transaction). While Plaintiff believes this case is distinguishable based on the dual-purpose and upsell telemarketing nature of the calling at issue, there was risk this Court would disagree, precluding any relief for the class.

Indeed, on the consent issue alone, courts have reached drastically different results. *Compare, e.g., Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12-3671, 2012 WL 6106714, at *6 (N.D. Ill. Dec. 6, 2012) (certifying TCPA class and finding no evidence that

11

issues of consent would be individualized), *with Jamison v. First Credit Servs.*, 290 F.R.D. 92,
106-07 (N.D. Ill. 2013) (declining to certify because "issues of individualized consent
predominate when a defendant sets forth specific evidence showing that a significant percentage
of the putative class consented to receiving calls on their cellphone"). There was thus a real risk
that the Court would find that Defendants' consent evidence precluded class certification based
on lack of predominating common questions. Indeed, defendants in similar TCPA cases have at
times been successful at arguing that poor quality or purported inconsistencies in their *own*
records from which the class may be identified preclude a finding of predominance under Fed. R.
Civ. P. 23(b)(3). *E.g., Luster v. Green Tree Servicing, LLC*, No. 14-1763 (N.D. Ga. Sept. 5,
2018) (Dkt. No. 153, at 15-17) (accepting general defense assertions that it obtains consent in a
variety of manners in finding lack of predominance, despite fact that defendant's data admittedly
lacked flags it used to track consent to place the calls at issue).

     The fact that call recipients were past customers also created risk that the Court might
accept Defendants' arbitration-based arguments based Defendants' online terms; indeed, on
April 5, 2016, the Court granted them leave to amend their answers to reflect this defense. Dkt.
154, 163. *See Thompson v. Sutherland Glob. Servs., Inc.*, No. 17-3607, 2019 WL 1470238, at *1
(N.D. Ill. Apr. 3, 2019) (granting motion to compel arbitration based on online terms).

     Further, the law governing the calls at issue has been in a state of flux. Numerous
petitions to the FCC regarding the TCPA were pending when Class Counsel first took on this
case—including on such basic applicable issues as the definition of an "automatic telephone
dialing system." The FCC ultimately issued a major, omnibus declaratory ruling on July 10,
2015, *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, at ¶¶ 10-24 (2015),
which the D.C. Circuit eventually vacated in part, in *ACA Int'l v. FCC*, 885 F.3d 687, 695 & 706

(D.C. Cir. 2018). Courts are still dealing with the aftermath of the *ACA Int'l* decision, and some have interpreted *ACA Int'l* to effectively preclude much of what has traditionally been considered an autodialer in the industry and under longstanding TCPA precedent. *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (adopting restrictive Third Circuit interpretation of what constitutes an ATDS); *but see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (rejecting restrictive ATDS interpretation by the Third Circuit post-*ACA Int'l*); *Espejo v. Santander Consumer USA, Inc.*, No. 11-8987, 2019 WL 2450492, at *8 (N.D. Ill. June 12, 2019) (citing *Marks* in finding dialer constitutes ATDS). The risk presented by this uncertainty in the law was not hypothetical: A key part of Defendants' argument in this case was based on their position that the dialer used to call Plaintiff and the Class did not constitute an ATDS. Dkt. 134-1 at 16-18. If the Court had ruled in their favor, this would have severely curtailed or eliminated many Class Members' ability to obtain *any* redress.

Defendants additionally asserted that Mr. Kaiser had not suffered an "injury-in-fact" sufficient to grant him standing to pursue his or the class' claims. *E.g.,* Dkt. 134. Even after the Supreme Court's ultimate ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the possibility of summary dismissal of this class was tangible. Some post-*Spokeo* courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See, e.g., Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.").

Class Counsel pursued this litigation on a contingency basis despite knowing that, even if they were ultimately successful at trial, they would likely face a lengthy appeal process or even a

reduction in the amount of recovery to the Class based on the extent of statutory damages, especially where some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *Golan v. Veritas Entm't, LLC*, No. 14- 69, 2017 WL 3923162, *4 (E.D. Mo. Sept. 7, 2017) (reducing amount of damages in TCPA case).

Class Counsel assumed the risk of this litigation, including not only the generous disbursement, apportionment, and allotment of time for each of the firms involved, but also the advancement of financial costs and expenses necessary to prosecute this matter zealously on behalf of Plaintiff and the Class. Given the lack of fee shifting under the TCPA, 47 U.S.C. § 227(b)(3), the uncertainty surrounding relevant law under the TCPA, and the unknown variables in relation to the size and nature of the class pre-suit, whether this Court would ultimately certify Plaintiff's proposed class on a litigation basis, and whether Plaintiff would ultimately be successful on the merits of his claims, the risk Class Counsel assumed was significant.). This factor supports the requested fee award.

### 3. The requested fee comports with the contract between Plaintiff and Class Counsel, and typical contingency fee agreements in this Circuit.

The "actual fee contracts that were negotiated for private litigation" may also be relevant considerations to a fee request *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Synthroid I*, 264 F.3d at 719); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here,

14

the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (finding 40% to be "the customary fee in tort litigation"); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"). This contingency range is further supported by the fact that the TCPA is not fee-shifting; as such, the attorney's fee model is more akin to personal injury matters than fee-shifting cases such as those brought under the Fair Credit Reporting Act, *see* 15 U.S.C. § 1681n(a), or the Fair Debt Collection Practices Act, *see* 15 U.S.C. § 1692k(a). This absence of fee shifting increases the risk to counsel, especially where, as here, the underlying statute places a cap on the amount of statutory damages available per violation to $500 or, at most, $1,500 at the Court's discretion upon a finding of willfulness, *see* 47 U.S.C. § 227(b)(3)—an amount that, in the absence of an exceptionally large number of calls or class-wide recovery, would be cost-prohibitive considering the fact that, for example, the extent of possible monetary relief under the TCPA for a single, non-willful violation barely covers the cost of filing a lawsuit.

In sum, the fees contemplated under Class Counsel's representation agreements for cases in this District and elsewhere generally fall within the one-third to 40% range. Exhibit A, Burke Decl. ¶ 14. This factor supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee ex ante and should be awarded.

### 4. *The requested fee reflects the fees awarded in other settlements.*

"As the Seventh Circuit has held, attorney's fee awards in analogous class action

settlements shed light on the market rate for legal services in similar cases." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) (citation omitted).

The reasonableness of Class Counsel's fee request here is further supported by the fact that awards of one-third of a settlement fund are commonplace. Some TCPA cases where this happened are as follows: *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No.

07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. 39) (same).[5]

Indeed, Plaintiff's fee request entirely comports with the *Pearson* reasonableness ratio (*i.e.*, fee as a percentage of the fee plus total in direct benefits to the class); that 34% figure likewise plainly falls within the range of reasonableness in this Circuit—especially given the exceptional result achieved. *E.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action for, inter alia, "the sum of 36% of the first $10 million"), *cert. denied*, 139 S. Ct. 923 (2019); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Dkt. 86) (37% of TCPA class settlement fund exclusive of expenses, administration costs, and service award, per Dkt. 76); *Kolinek*, 311 F.R.D. at 501 (36% of TCPA class settlement fund exclusive of notice/admin costs and service award). Plaintiff respectfully submits that the success Class Counsel secured on behalf of the Class despite the considerable obstacles and risk faced in this litigation supports the requested fee.

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in

---

[5]     Some other, non-TCPA cases where one-third of the entire fund was awarded, include: *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76-2178, 1987 WL 11558, at *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131-32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198-99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

non-TCPA cases in this Circuit. *Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D.

Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*,

No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus

costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17,

2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015

WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v.

BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5%

of the fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL

1402018 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am.,

Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund).[6]

Consequently, the requested fee award falls in line with numerous other settlements

approved as reasonable in this Circuit and it, respectfully, should be approved.

### 5.    *The quality of performance and work invested support the fee request.*

The quality of Class Counsel's performance and time invested through substantial

discovery and adversarial negotiations to achieve a $15 million Settlement Fund for the benefit

of the Settlement Class further supports the requested fee award.  *Sutton*, 504 F.3d at 693. In

addition to accepting considerable risk in litigating this action, Class Counsel committed their

time and resources to this case without any guarantee of compensation, whatsoever, only

achieving the Settlement after substantial litigation. They conducted a pre-suit investigation,

propounded discovery, conducted review of approximately 135 GB of data, subpoenaed third

parties, retained an expert, moved for class certification, overcame dispositive motion practice,

---

[6]    *Synthroid I* also says that District Courts may look to any data from pre-suit negotiations and class-counsel auctions but such information is basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. 501.

participated in two all-day mediations in Chicago (with two different nationally recognized mediators, both of which were preceded by mediation briefs), spent weeks negotiating and finalizing the settlement and ancillary papers, and otherwise zealously prosecuted this action for the benefit of the Class. <u>Exhibit A</u>, Burke Decl. ¶ 18; <u>Exhibit B</u>, Broderick Decl. ¶¶ 4-17.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. *See* <u>Exhibit A</u>, Burke Decl. ¶¶ 2-11, 16, <u>Exhibit B</u>, Broderick Decl. ¶¶ 19-25, <u>Exhibit C</u>, McCue Decl. ¶¶ 5-11; <u>Exhibit D</u>, Murphy Decl. ¶ 3 (incorporating prior declaration by reference). And because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the strength of the Settlement, the extensive discovery conducted, and the adversarial nature of the litigation and settlement discussions, Class Counsel respectfully submit that their experience and the quality and amount of work invested for the benefit of the Class supports the requested fee.

### c. *The stakes of the case further support the fee request.*

The stakes of the case further support the requested fee award. This case involves more than Settlement Class Members who allegedly received nonconsensual robocalls from Defendants on 233,079 unique cellular telephone numbers. Dkt. 411-1, Agr. Ex. C-2 ¶ 5. The amount each Settlement Class Member is individually eligible to recover is low—between $500 and $1,500 per violation, *see* 47 U.S.C. § 227(b)(3)—and thus individuals are unlikely to file individual lawsuits, especially because the TCPA does not provide for the recovery of attorneys' fees. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to the beginning of the class period, making it even less likely that people would file individual

19

lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

**B.** **The Court Should Also Award Reasonable Reimbursement for Expenses.**

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722; *see also Spicer v. Chi. Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation). *Hale v. State Farm*, 2018 U.S. Dist. LEXIS 210368, at *48-49 (S.D. Ill. Dec. 13, 2018) (requested expenses are only 2.8% of the common fund, which is significantly less than the average of "4 percent of the relief for the class.")[7]; *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 27, 70 (2004)). Moreover, "Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *Beesley*, 2014 U.S. Dist. LEXIS 12037, 2014 WL 375432, at *3. Furthermore, here, as in *Beesley*, "the fact that Class Counsel does not seek interest as compensation for the time value of money or costs associated with advancing these

---

[7] Class Counsel's expenses are approximately 2.7% of Settlement Fund.

expenses to the Class makes this fee request all the more reasonable." *Id.* Finally, Class Counsel incurred significant costs after submitting their motion—and will continue to do so until the settlement is finalized—for which they have not sought reimbursement. *Hale v. State Farm* 2018 U.S. Dist. LEXIS 210368, at *48-49.

Here, Class Counsel have incurred $402,991.03 in reimbursable expenses related to filing, appearances, discovery, subpoenas, data analysis, mediation, litigation, and travel. Exhibit A, Burke Decl. ¶ 17; Exhibit B, Broderick Decl. ¶ 16; Exhibit C, McCue Decl. ¶ 12. Exhibit D, Murphy Decl. ¶ 3. These expenses included expert fees to analyze the massive amount of data produced in the case as well as data storage charges that were necessary to prosecute litigation of this size and complexity on behalf of the Settlement Class. *Id.* Class Counsel's expenses are typical of expenses regularly awarded in large-scale class actions, based on counsel's experience. *Id.* Accordingly, Class Counsel request that the Court approve as reasonable expenses in the amount of $4402,991.03.

### C.   The Incentive Award to the Class Representative Should Be Approved.

Class Counsel also respectfully request that the Court grant a service award of $15,000 to Plaintiff Kearby Kaiser. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Indeed, without Plaintiff serving as Class Representative, the Class would not have been able to recover anything. *See In re Iowa Ready-*

*Mix Concrete Antitrust Litig.*, No. 10-4038, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach … plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes this commitment and the benefits secured for other class members, and is thus reasonable under the circumstances of this case.").

Mr. Kaiser spent considerable time pursuing Class Members' claims. In particular, Mr. Kaiser communicated with counsel to keep apprised of this matter, participated in the pre-suit investigation and discovery process, including producing documents and responding to information requests, sitting for a deposition, and ultimately approving and executing the Settlement Agreement. Exhibit A, Burke Decl. ¶ 20.

Moreover, the amount requested here, $15,000, is comparable to or less than other awards approved by federal courts in this Circuit. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. 201) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. 243 ¶ 20) (awarding $30,000 incentive awards in TCPA class settlement).

## VI.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $5,000,000 in fees and $402,991.03 to reimburse their out-of-

pocket costs. Class Counsel further request that the Court approve a service award to Plaintiff

Kaiser in the amount of $15,000.

Respectfully submitted,

KEARBY KAISER, individually and on behalf of a class of all persons and entities similarly situated

Dated: October 2, 2019      By:   */s/ Edward A. Broderick*
                                Edward A. Broderick (*pro hac vice*)
                                Email: ted@broderick-law.com
                                BRODERICK LAW, P.C.
                                99 High Street, Suite 304
                                Boston, Massachusetts 02110
                                Telephone: (617) 738-7080

Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288

Brian K. Murphy
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
murphy@mmmb.com

Matthew P. McCue (*pro hac vice*)
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415

*Counsel for Plaintiff and the Settlement Class*

23

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have on this day, October 2, 2019, filed the within and foregoing

motion, memorandum, and exhibits using the CM/ECF system, which shall serve such on all

counsel of record.

*/s/ Edward A. Broderick*
Edward A. Broderick
